```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

**PROVIDER SYNERGIES, LLC,**

       **Plaintiff,**

v.                                         Civil Action No. 2:08-0101

**GOOLD HEALTH SYSTEMS d/b/a**
**GHS DATA MANAGEMENT,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

Pending is the defendant's motion to dismiss for failure to join the State of West Virginia as an indispensable party, filed March 5, 2008.

I.

Plaintiff Provider Synergies, LLC ("Provider Synergies") and defendant Goold Health Systems d/b/a GHS Data Management ("GHS") are private pharmacy benefit managers that are competitors in the business of negotiating discounts or "supplemental rebates" on prescription drugs with manufacturers on behalf of State Medicaid programs.  (Verified Compl. ¶¶ 2, 4, 5, 13).  Provider Synergies negotiates supplemental rebates on behalf of a multi-state purchasing pool of State Medicaid

programs which it manages, called the TOP$ pool. (Id. ¶ 21). A second purchasing pool is The Sovereign States Drug Consortium ("SSDC"), which is managed by GHS. (Id.).

Drug manufacturers offer different supplemental rebates specific to each pool based on factors such as volume discounts and usage patterns. (Id. ¶¶ 22, 29). Information concerning these supplemental rebates is allegedly confidential under the terms of an agreement to which the member states agree as a condition of participation. (Id. ¶¶ 23, 25, 26, 30-33).

On July 1, 2005, the State of West Virginia, Department of Health and Human Resources, Bureau of Medicaid Services ("State") joined the TOP$ pool by signing the TOP$ Medicaid Program Participation Agreement, an attachment to the TOP$ State Supplemental Rebate Agreement. (Id. ¶ 27). The agreement was a tripartite arrangement between the participating TOP$ pool state agencies, Provider Synergies, and the drug manufacturers. (Id.). It was in place through December 31, 2007, and conditioned the ability of the states to participate in the TOP$ pool upon maintaining confidentiality. (Id. ¶¶ 27, 30-33).

In early 2007, the State issued a request for proposals to negotiate supplemental rebates on its behalf. (Id. ¶ 34). In

October 2007, the State chose GHS's SSDC pool over Provider Synergies' TOP$ pool to negotiate supplemental rebates for 2008 and beyond. (Id. ¶ 35). The State's membership in the TOP$ pool ended on December 31, 2007, as contemplated in the agreement. (Id. ¶¶ 27, 36).

According to Provider Synergies, GHS solicited from the State, and the State provided, hundreds of allegedly confidential supplemental rebates that Provider Synergies had negotiated on behalf of the TOP$ pool in the preceding years. (Id. ¶ 38). It is undisputed that the information regarding the supplemental rebates obtained on behalf of the State by Provider Synergies includes:

> (a) invoices for supplemental rebates from the second quarter of 2007;
>
> (b) separate supplemental rebate contracts among Provider Synergies, the State, and pharmaceutical manufacturers; and
>
> (c) a spreadsheet reflecting the various pharmaceutical manufacturers that contracted with the State, contract timing information, and Guaranteed Net Unit Prices negotiated for and on behalf of the State.

(Id. ¶ 40; Def.'s Memo. in Supp. of M.T.D. at 2-3). Provider Synergies asserts "GHS knew this information was highly confidential and knew its acquisition of such information was improper." (Verified Compl. ¶ 40). It is plaintiff's belief

3

that GHS used this information in an effort to negotiate on behalf of the State with various drug manufacturers for supplemental rebates identical to TOP$'s supplemental rebates. (Id. ¶ 41).  A letter dated December 19, 2007, from GHS to the State, attached as an exhibit to the verified complaint, indicates GHS received invoices and copies of existing contracts concerning supplemental rebates and spreadsheets regarding the drug manufacturers and their net prices that had been negotiated by Provider Synergies.  (Id. ¶¶ 41-42; 12-19-07 GHS Ltr. to State, attached as Ex. B to Verified Compl.).  Provider Synergies disputes GHS' statement in the letter that it needed the confidential pricing and discount information to perform its contract with the State.  (Verified Compl. ¶ 43).

II.

On February 12 and 13, 2008, plaintiff filed a verified complaint, a motion for preliminary injunction, and a motion for expedited discovery.  The two-count verified complaint alleges misappropriation of trade secrets (Count I) and tortious interference with contractual relations (Count II).  The ad damnum clauses request the court enjoin GHS, and its agents, from using or disclosing any confidential information it obtained from

the State and award plaintiff damages, together with attorneys' fees and costs.  (Compl.).

On March 10, 2008, <u>nunc pro tunc</u> as of March 6, 2008, by agreed consent order, the parties agreed to the following: (1) defendant shall not use the alleged trade secret information but may otherwise perform its contractual obligations to the State; (2) defendant shall, within one week of that order, permanently delete from its computer system all of the alleged trade secret information and confirm such deletion in writing to the court;[1] and (3) defendant shall no longer have access to the information at issue unless authorized by the court in connection with its defense.  (03-06-08 Order).  Based on representations by the parties that this order resolved the plaintiff's pending motions for preliminary injunction and expedited discovery, the court dismissed the motions without prejudice in an order entered on April 7, 2008.

### III.

The court begins with the proposition that dismissal of a case for nonjoinder is a drastic remedy that should be employed

---

[1]  The court has yet to receive this written confirmation.

only sparingly.  National Union Fire Ins. Co. v. Rite Aid of South Carolina, Inc., 210 F.3d 246, 250 (4th Cir. 2000); Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 918 (4th Cir. 1999)).  "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result."  Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 441 (4th Cir. 1999) (internal citations omitted).  This hesitance extends beyond the Fourth Circuit as "federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result."  7 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 1604 (3d ed. 2001).

Defendant's motion to dismiss for failure to join an indispensable party is brought pursuant to Rule 12(a)(7) of the Federal Rules of Civil Procedure.  (Def.'s Memo. in Supp. of M.T.D. at 1).  The governing rule regarding required joinder of parties is Rule 19 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 19.  Rule 19 sets forth the two-step inquiry of, first, whether the party is "necessary" to the action under Rule

6

19(a), and, second, whether the party is "indispensable" under Rule 19(b). American General Life and Acc. Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005) (citing National Union Fire Ins., 210 F.3d at 249). The defendant, as the party seeking dismissal for nonjoinder, has the burden of demonstrating that the party not joined is necessary and indispensable. Id.

It is apparent that the State is neither necessary nor indispensable to this action. GHS suggests the plaintiff could proceed to the West Virginia Court of Claims. (Def.'s Memo. in Supp. of M.T.D. at 17; Def.'s Reply to Resp. to M.T.D. at 7). The statute establishing the West Virginia Court of Claims allows the plaintiff to sue only the State in that forum and makes no provision for suit therein against a party other than the State. See W. Va. Code § 14-2-1 et. seq. The parties agree, of course, that the Eleventh Amendment prohibits the State from being made a defendant in this action. (Def.'s Memo. in Supp. of M.T.D. at 13-16; Pl.'s Resp. to M.T.D. at 9).

The State is not a necessary party inasmuch as complete relief can be accorded the existing parties without the State as a party and inasmuch further as the State's absence will not impair the ability to protect its own interest -- and a decree in this case can be fashioned so that GHS runs no substantial risk

of incurring multiple or inconsistent obligations because of any interest of the State.  Fed. R. Civ. P. 19(a).

Even if the State were deemed a necessary party, it is not an indispensable one under Rule 19(b).  While the State cannot be joined, any potential prejudice against it in this action can be avoided by shaping the relief afforded the existing parties without prejudicing them and by adding protective provisions in any judgment.  Fed. R. Civ. P. 19(b)(2).  If this action were dismissed for nonjoinder, the plaintiff would be without an adequate remedy against GHS.  Furthermore, to the extent a judgment against the defendant could possibly affect the State, the court will be careful to craft that relief to ensure that it is not binding on the State and to further protect the State from other adverse consequences.  See Keal, 173 F.3d at 918 (citing Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 112 n. 10 (1968)) (ultimate question is whether a decree can be crafted in a way that protects the interests of the missing party and that still provides adequate relief to a successful litigant).

Defendant GHS having failed to meet its burden of demonstrating that the State is a necessary and indispensable party to this action, its motion is denied.  See Wood, 429 F.3d

at 92; National Union Fire Ins., 210 F.3d at 250; Keal, 173 F.3d at 918; Meade, 186 F.3d at 441; 7 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure §§ 1604, 1609 (3d ed. 2001).

IV.

It is, accordingly, ORDERED that the motion of the defendant to dismiss for failure to join the State of West Virginia as an indispensable party be, and it hereby is, denied.

The Clerk is requested to transmit this written order to all counsel of record.

DATED: July 23, 2008

John T. Copenhaver, Jr.
United States District Judge